**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| OASIS LEGAL FINANCE<br>OPERATING COMPANY, LLC, | ) | Case No. |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DIANA GRAMENOS, | ) | |
| DISABILITY CORNER, LLC and | ) | |
| OASIS DISABILITY GROUP, | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) | |

**COMPLAINT**

Plaintiff, OASIS LEGAL FINANCE OPERATING COMPANY, LLC ("Oasis" or "Plaintiff"), by its attorneys, Irwin IP LLC, complains against DIANA GRAMENOS ("Gramenos"), DISABILITY CORNER, LLC ("Disability Corner"), and OASIS DISABILITY GROUP ("ODG") (together "Defendants") and alleges the following:

**NATURE OF THE ACTION**

1.     In this action for trademark infringement, unfair competition, deceptive trade practices, and Anticybersquatting, Oasis seeks injunctive and monetary relief.  This action arises under the Lanham Act, 15 U.S.C. §1051 *et seq.* and the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq.*

2.     This action arises from, *inter alia*, Defendants' intentional infringement of Oasis's Oasis trademarks.  In violation of state and federal law, Defendants have directly and/or vicariously, blatantly, and intentionally infringed, and continue to infringe, Oasis's protectable intellectual property rights by, among other acts, using the trademark Oasis Disability Group in connection with services related to the services Oasis offers, and the same as those formerly offered

1

by Oasis through its then-employee Defendant Gramenos, such that consumers will be confused and misled that Defendants' infringing services come from or are authorized by Oasis.

## JURISDICTION AND VENUE

3.     This Court has jurisdiction over this action pursuant to 15 U.S.C. § 1121(a) because this action arises under the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*; and under federal question jurisdiction pursuant to 28 U.S.C. § 1331; and pursuant to 28 U.S.C. §1338(a) regarding Acts of Congress relating to trademarks; and 28 U.S.C. § 1367 providing supplemental jurisdiction.

4.     Count III for deceptive trade practices and false advertising under Illinois law is so closely related to Counts I, II, and IV, which arise under federal law, that they form part of the same case or controversy, thereby giving this Court supplemental jurisdiction under 28 U.S.C. § 1367(a) over the related state law claims in Count III.

5.     Defendants Gramenos and Disability Corner are subject to personal jurisdiction in this District because they reside in this District, own real property in this District, regularly and systematically conduct business in this District, and/or they have committed the tortious acts complained of herein in this District.

6.     Upon information and belief, Defendant ODG is a d/b/a of Disability Corner and/or the successor in interest to Disability Corner, but the formal corporate entity for ODG is unlocatable.

7.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b)(1).

## THE PARTIES

8.     Oasis is a Delaware limited liability company with its principal place of business located at 9525 Bryn Mawr Road in Rosemont, Illinois.

9.     Upon information and belief,  Defendant Diana Gramenos is an individual residing in Highwood, Illinois.  Gramenos purports to be the President of and attorney for an entity called

"Oasis Disability Group," which, upon information and belief, offers assistance securing social security disability benefits under the mark "Oasis Disability Group." *See* Exhibit A. Gramenos is also the President/Lead Attorney of Disability Corner. See Exhibit B.

10. Defendant Disability Corner LLC is a Delaware limited liability company with a principal place of business located at 500 N. Lake Cook Road, Deerfield, Illinois, 60015. Upon information and belief, Disability Corner is engaged in doing business in Cook County and Lake County, Illinois.

11. Upon information and belief, Defendant ODG is a d/b/a of Disability Corner or the successor in interest to Disability Corner, but the formal corporate entity for it is unlocatable. Upon information and belief, ODG is currently engaged in doing business in Cook County and Lake County, Illinois.

## OASIS

12. Since 2003, Oasis has provided a variety of financial services under its Oasis trademarks, with its core service offering being legal funding. Legal funding is the provision of a debt-free financial option for persons who have a pending legal claim. By selling an interest in the potential proceeds of a claim to Oasis, a person can obtain income while pursuing the fair value of his or her claim. Legal funding helps those who purchase it meet their liquidity needs while they await resolution of a pending litigation or insurance claim.

13. Oasis also offers structured settlement services under its Oasis trademarks. A structured settlement is an arrangement that provides a plaintiff with regular payments over the course of several years or for the rest of the plaintiff's life. In a structured settlement, a defendant's insurer typically funds an annuity policy for the plaintiff and the annuity produces a continuous stream of income over the term of the structured settlement. For a qualified consumer, Oasis

3

purchases one or more future payments due under the structured settlement from the insurer, and provides the consumer with an upfront lump sum.

14.     If a consumer comes to Oasis with a structured settlement that does not meet Oasis's purchase criteria, Oasis works with an affiliate group of companies that may be able to purchase that consumer's structured settlement. Upon request from such consumers, Oasis may, with permission from the consumers, refer them to a third party with whom Oasis has a lead generation agreement to provide referrals.

15.     In 2012, Oasis offered Social Security disability advocacy services under the common law trademarks Oasis Disability Advocates and Oasis Disability. Providing such services involves assisting consumers apply for and pursue claims for Social Security Disability (SSDI) benefits. If a consumer is unable to work due to a disabling medical condition, a social security disability advocate helps determine whether the consumer is eligible for SSDI benefits, and then assists the consumer apply for them through the multistage, and often several month-long process required to secure such benefits from the Social Security Administration. If the consumer successfully obtains a monetary award, then the disability advocate collects an agreed-upon portion of the recovered benefit dollars as a fee. In 2012, Defendant Gramenos was employed by Oasis and ran Oasis's disability advocacy business from its inception.

16.     Oasis obtains customers for its various product offerings in a few different ways. First, when consumers, generally plaintiffs in litigation, see Oasis's advertising materials they contact Oasis via telephone or email and/or a visit to Oasis's website for more information. Second, attorneys that have worked with or heard about Oasis over the years recommend Oasis to their clients who are struggling with liquidity needs during litigation. Third, third-party brokers may set up a website or business to locate/attract the attention of plaintiffs in litigation who may

4

need consumer legal funding, then those brokers refer those potential consumer customers to Oasis.

17.    Oasis may also obtain payments pursuant to a lead generation agreement or other referral fee arrangement if it refers consumers to a third party.

18.    Since its formation, Oasis has been a pioneer in the legal funding market, holding a leading market share in the United States for such services.  Over its many years of providing legal funding and other financial services under the Oasis marks, Oasis has developed a reputation as a high quality and trustworthy service provider.

19.    Oasis owns a family of distinctive OASIS marks ("Oasis Marks" or "family of Oasis Marks").  The following table sets forth Oasis's federally registered Oasis Marks:

| Mark | Reg. No. | Status | Goods/Services |
|---|---|---|---|
| OASIS LEGAL FINANCE® | 3,305,665 | 1st Use 7/15/2003 Registered 10/9/2007 Incontestable 10/8/2013 | (IC 36) Financial services, namely, lending money to law firms and providing cash advances to persons suing for damages arising from personal injuries or other damages to parties in litigation and other legal proceedings. |
| OASIS® | 4,889,677 | 1st Use 7/15/2003 Registered 1/19/2016 | (IC36) Consumer financial service, namely, providing pre-settlement legal funding. |

| Mark | Reg. No. | Status | Goods/Services |
|---|---|---|---|
| OASIS FINANCIAL BECAUSE LIFE MOVES FASTER THAN YOUR CASE® | 4,990,045 | 1st Use 10/01/2015 Registered 6/28/2016 | (IC36) Consumer financial service, namely, providing pre-settlement legal funding. |
| OASIS FINANCIAL BECAUSE LIFE MOVES FASTER THAN YOUR CASE® (design) | 4,990,044 | 1st Use 10/01/2015 Registered 6/28/2016 | (IC36) Consumer financial service, namely, providing pre-settlement legal funding. |

20. A true and correct copy of each of the above-listed federal trademark registrations, as well as documentation indicating their assignment to Oasis, is attached hereto as Exhibit C.

21. Oasis's registered trademarks are distinctive as indicated by their registrations on the Principal Register.

22. Oasis's registrations constitute prima facie evidence of the validity of the registered marks and of the registration of the marks, of Oasis's ownership of and exclusive right to use the registered marks in commerce on or in connection with the goods or services specified in the registrations.

23. Oasis's registration for Oasis Legal Finance® is incontestable and is thus conclusive evidence of the validity of that mark and of the registration of the mark, of Oasis's ownership of the mark, and of Oasis's exclusive right to use the registered mark in commerce.

24. Oasis has, since it first began using the Oasis Marks, expended millions and millions of dollars on marketing and advertisements to promote its services under its Oasis Marks. Oasis's marketing expenditures were approximately $10 million in each of 2013, 2014, 2015, and 2016. Oasis spends more on its direct to consumer advertising than any of its direct competitors.

As a result of Oasis's significant investment in advertising and promoting its Oasis Marks, the Oasis Marks have become well known and associated with Oasis and its high quality services.

25. Oasis uses and has used its Oasis Marks as part of its domain names oasislegal.com and oasisfinancial.com. A true and accurate copy of Oasis's domain name registrations are attached hereto as Exhibit D.

26. Oasis also owns several other domain names, all of which capitalize on the renown of the Oasis Marks. Notably, Oasis has owned the domain name oasisdisability.com since 2012, and currently, it directs traffic to Oasis's main website. See Exhibit E.

27. Oasis uses and has used its Oasis Marks throughout its websites, and on its social media pages as shown below in these examples:





28.     Since long before the acts of Defendants herein, Oasis and/or its predecessor in interest has continually used the Oasis Marks in interstate commerce in connection with financial services, and as such Oasis has acquired a tremendous amount of goodwill in the Oasis Marks.

## OASIS DISABILITY ADVOCATES

29.     A significant majority of Oasis's plaintiff consumers are injured due to automobile accidents or work-related injuries, and often such consumers may wish to seek Social Security disability benefits in addition to pursuing litigation.  Similarly, many of Oasis's attorney contacts in its attorney network represent plaintiffs who may wish to seek social security benefits.  In early

2012, certain Oasis executives took steps to enter the disability advocacy business and begin leveraging Oasis's existing business contacts to locate and customers seeking Social Security disability benefits.

30.     On March 26, 2012, Defendant Gramenos, an attorney with experience in Social Security claims administration, entered into an Employment at Will Agreement with Oasis.  The agreement contained various post-employment restrictions, including nondisclosure, non-disparagement, non-competition and non-solicitation provisions.  Defendant Gramenos's job was for the newly-created position of Oasis's Product Manager-Disability Advocacy Services.

31.     In April of 2012, Oasis entered into a strategic alliance with Liberty Disability Advocates, Inc. ("Liberty"), a third party entity specializing in Social Security advocacy.  That agreement provided, in part, that Oasis was to refer Social Security disability leads coming from within a defined territory to Liberty, and Liberty would pay Oasis a referral fee for each lead that resulted in Liberty successfully aiding a client to recover SSDI benefits.

32.     In or about the second quarter of 2012, Oasis's call centers began to screen callers seeking lump sum funding for accident claims to see if they also qualified for Social Security disability benefits, and if they need representation in that regard.   When a call came into the Oasis call center, the call center staff would use a step-by-step customized Social Security Script to determine if the caller might meet the Social Security Administration's definition of disabled. Upon determining that a caller may be eligible for Social Security disability benefits, Oasis call center staff would either refer potential customers to its own Oasis Disability Advocate specialist, Defendant Gramenos, or refer them to Liberty Disability Advocates, Inc., depending on the territory in which the particular consumer was located.

33.     Oasis began developing a website at the domain oasisdisability.com in connection with its Oasis Disability Advocacy service offering.

34.     Between April and November 2012, Defendant Gramenos had signed up and was working to secure benefits for several clients of the Oasis Disability Advocates services.  Due, however, to the lengthy processing time of pursuing claims with the Social Security Administration, no benefits had been received and therefore no fees had been paid to Oasis in connection with those cases during that time.

35.     By fourth quarter 2012, the Oasis board members decided to suspend the provision of Social Security disability services by Oasis.  Nevertheless, Oasis continued to track incoming consumer requests for Social Security disability benefits to refer them to third parties.

36.     On December 17, 2012 Defendant Gramenos's employment with Oasis terminated and on December 26, 2012, she signed her Separation and Release agreement ("Separation Agreement").  The Separation Agreement contained an atypical carve out allowing Defendant Gramenos to continue working as a Social Security disability advocate.  See Exhibit F.

37.     The Separation Agreement also included a provision by which Gramenos agreed that she "shall not directly or indirectly, individually or in concert with others disparage interfere with or attempt to interfere with Oasis's services, business, goodwill [or] reputation."  See *Id*.

38.     Disability Corner, LLC was established as a Delaware limited liability company on December 11, 2012.

39.     Immediately upon being terminated by Oasis, Defendant Gramenos began to work for Disability Corner.  She forwarded her Oasis Disability phone number to Disability Corner and took with her Oasis computers, Oasis software licenses, and an Oasis call center employee named Angelika Paciorek.  Oasis call center staff continued to forwarded leads within Defendant

Gramenos's prior Oasis territory to Defendant Gramenos at Disability Corner. Oasis was not compensated by Defendant Gramenos or Disability Corner for referring those leads.

40.     During this same time, Disability Corner also hired the same website developer that created Oasis's oasisdisability.com website, and upon information and belief, Disability Corner copied much of Oasis's website content from oasisdisability.com to the new disability-corner.com website, simply replacing the name and mark Oasis Disability with the name and mark Disability Corner.

41.     Upon information and belief, Defendant Gramenos migrated each of the accounts that she handled as an Oasis employee directly to herself at her new employer Disability Corner.

## UNLAWFUL USE OF THE OASIS MARKS

42.     Recently, Gramenos and Disability Corner have started doing business under the names and marks Oasis Disability and Oasis Disability Group.

43.     Oasis has not authorized, licensed, or otherwise granted rights or permission to any of the Defendants to use any of its Oasis Marks or to hold themselves out as authorized by Oasis.

44.     Gramenos and Disability Corner are intentionally and in bad faith trying to confuse and misled the public into thinking that Oasis Disability is Oasis, or is authorized or sponsored by Oasis. On January 22, 2016, a press release announced that "Oasis Legal Finance Group… **will once again** provide Social Security Disability Services to help those trying to navigate the complicated Social Security Benefits application process." See Exhibit G (emphasis added). This statement could only be intended to imply that the Oasis "Group" entity referenced in the press release is the same Oasis entity (i.e., Plaintiff here) that had been offering social security disability services in the past; it is not. The press release is deliberate, false, and misleading. Oasis did not

prepare that release, did not authorize that release, and was not, as of January 22, 2016, itself entering the Social Security disability services sector.

45.     Upon information and belief, one or more of Defendants authorized the false and misleading January 22, 2016 press release.

46.     On November 2, 2016, a privacy protected entity registered the domain oasisdisabilitygroup.com.  See Exhibit H.  Upon information and belief, Defendant Gramenos and/or Disability Corner is the registrant of oasisdisabilitygroup.com.

47.     A comparison of Disability Corner's website at disability-corner.com with ODG's website at oasisdisabilitygroup.com shows that they are essentially identical in appearance and design and share significant amounts of identical text.  For example:

| oasisdisabilitygroup.com | disability-corner.com |
|---|---|
| "Social Security Programs and Benefits" "The Social Security Disability programs provide financial assistance to individuals who are disabled, unable to work due to their disabilities, and unable to provide financially for themselves or their families. In addition to individuals qualifying for Social Security Disability benefits, spouses and children of a disabled person may also qualify for Social Security Disability benefits as well." | "Social Disability Programs and Benefits" "The Social Security Disability programs provide financial assistance to individuals who are disabled, unable to work due to their disability, and unable to provide financially for themselves or their families. In addition to individuals qualifying for social security disability benefits, spouses and children of a disabled person may qualify for Social Security disability benefits as well, under certain conditions." |

See screen grabs, below and compare Exhibit I and Exhibit J.



**Social Security Disability Programs and Benefits**

The Social Security Disability programs provide financial assistance to individuals who are disabled, unable to work due to their disabilities, and unable to provide financially for themselves or their families. In addition to individuals qualifying for Social Security Disability benefits, spouses and children of a disabled person may also qualify for Social Security Disability benefits as well.

Under the Social Security Disability Insurance Benefits program, benefits are paid to qualifying persons who are "insured" under the rules for Social Security Disability Insurance. This means that the disabled person must have worked long enough and have paid Social Security taxes (aka FICA) to earn a minimum number of "credits." Each year, an individual can earn up to 4 credits. The amount needed to earn a single credit changes annually, and currently for 2017 that amount is $1,300 per quarter, so when you've earned $5,200, you've earned your4 credits. To be "insured" one must have earned at least 40 credits and a good rule of thumb is that you have worked at least 5 years out of the past 10 years leading up to becoming disabled. The number of credits fluctuates based on the disabled workers' age. Your insured status will continue for approximately 1-2 years following the date that you stop working, thereby maintaining your insured status even if you apply two years after you became unable to work. It's critical to apply before you are uninsured!

As previously noted, the number of credits you need to qualify for Social Security Disability insurance benefits depends on your age at the time you become disabled. It normally requires 40 credits to qualify for Social Security Disability insurance benefits, however there are exceptions; i.e. fewer credits may be needed if the worker is younger. If you're not sure if you've earned enough credits, simply call us and our staff will be happy to help determine the amount of credits you need to qualify.

In 2014, a little over 2.4 million applications were filed for Social Security Disability benefits. While no one wants to be disabled, nor really thinks that it will happen to them, according to the Social Security Administration, a 20-year old has a 30% chance of becoming disabled before they reach retirement age. 30%? That is a shockingly high chance of becoming disabled.

You are visiting our website likely because you are considering filing an application for Social Security disability benefits. If so, you've come to the right place. The process of applying for benefits and working through the system can be intimidating and daunting; however, the disability staff and attorneys at Oasis Disability are extremely well versed in how the Social Security disability process works. We have significant experience in navigating through the complexities and seemingly endless details of each application in order to provide the best chance of winning your claim.

To receive a FREE evaluation of your case, simply complete the form on this page, or call us toll-free at 1-800-511-9526. We'll discuss your case and give you honest feedback. If you decide you want to work with Oasis Disability to represent you in your Social Security disability claim, there are no up-front fees. We get paid when you win your case.



48.     Upon information and belief, Defendants' business plan in operating ODG at the oasisdisabilitygroup.com website is to take advantage of the large advertising spend on and significant awareness of the Oasis Marks to attract consumers who have been injured and are seeking litigation funding or Social Security disability benefits to ODG and oasisdisabilitygroup.com rather than to Oasis and its websites.

49.     Upon information and belief, the unlawful acts described herein have already caused, and will continue to cause if not enjoined, actual confusion.

50.     Upon information and belief, Defendants' infringing actions have diverted and will continue to divert potential Oasis customers away from Oasis and to Defendants, thus prohibiting Oasis from referring such customers to Social Security disability providers in exchange for a lead generation fee.

51.     By using marks confusingly similar to Oasis's Marks without Oasis's authorization and outside of Oasis's control, Defendants have harmed, and will continue to harm, Oasis's good will and reputation.

<u>COUNT I:</u>

<u>FEDERAL TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1114(1)</u>

52.     Oasis realleges and incorporates by reference paragraphs 1 through 51 of this Complaint as if set forth fully herein.

53.     Without the consent of Oasis, Defendants have used the mark Oasis Disability Group and Oasis Disability to offer disability advocacy services, which marks are nearly identical to the mark Oasis first used when it offered disability services in 2012 – Oasis Disability Advocates.  Defendants' marks are also confusingly similar to Oasis's federally registered Oasis® and Oasis Legal Finance® marks ("Asserted Oasis Marks").

54.     Upon information and belief, Gramenos personally participates in and/or has the right and ability to supervise, direct, and control the wrongful conduct of Defendants ODG and Disability Corner.

55.     Upon information and belief, Gramenos has an obvious and direct financial interest in the exploitation of the Asserted Marks.

56.     Upon information and belief, Gramenos is a moving, active, conscious force behind

the infringement of the Asserted Marks.

57.     Upon information and belief, beginning in early 2017, Gramenos, with actual knowledge that neither she nor the other Defendants had any rights to the Oasis Marks, began to advertise and promote herself as the President of "Oasis Disability Group."

58.     Upon information and belief, Defendants have intentionally chosen to use confusingly similar marks to unfairly and unlawfully misappropriate Oasis's goodwill and divert potential customers from Oasis to themselves.

59.     Usage of a trademark confusingly similar to the Asserted Oasis Marks on the oasisdisabilitygroup.com website and otherwise to offer Social Security advocacy services constitutes use in commerce in connection with the sale, offering for sale, distribution, and advertising of goods and services.

60.     Defendants had no good faith basis to register the domain name oasisdisabilitygroup.com and/or use a trademark confusingly similar to the Asserted Oasis Marks to offer services so closely related to Oasis's services that consumers would certainly believe they came from or were authorized by Oasis.  Indeed, as Defendants are aware, Defendant Gramenos actually offered those same exact services on behalf of Oasis when she was employed at Oasis.

61.     On information and belief, Defendants' intent in registering and using the infringing domain name and using the Oasis Disability and Oasis Disability Group marks was to profit from the goodwill and reputation associated with the Asserted Oasis Marks, and siphon customers away from Oasis to Defendants.

62.     Defendants' use of the Oasis Disability and Oasis Disability Group marks in commerce is likely to cause consumer confusion and mistake, and is likely to deceive as to source or origin of Defendants' services, and to the affiliation, association, or connection of Defendants,

with Oasis.

63.     Defendants' use of the infringing domain name and the Oasis Disability Group and Oasis Disability marks described herein constitutes infringement of Oasis's federally registered trademarks in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

64.     Defendants' infringement of the Asserted Marks has resulted in actual and probable injury to Oasis, and Oasis is likely to continue to suffer harm without judicial intervention.

65.     Oasis has no adequate remedy at law for the irreparable injury and other damage Defendants are causing to Oasis's business reputation and goodwill.

66.     Oasis has suffered and continues to suffer economic loss in an amount to be proven at trial directly and proximately caused by Defendants' unlawful acts as alleged herein.

67.     On information and belief, Defendants' actions have been intentional, with knowledge, willful, with actual malice, and in bad faith, justifying the imposition of enhanced damages.

68.     Defendants' actions make this case exceptional within the meaning of 15 U.S.C. § 1117(a), thereby entitling Oasis to an award of reasonable attorneys' fees and costs.

## COUNT II:

## FEDERAL UNFAIR COMPETITION UNDER 15 U.S.C. § 1125(A)(1)(a)

69.     Oasis realleges and incorporates by reference paragraphs 1 through 68 of this Complaint as if set forth fully herein.

70.     Defendants' use of the Oasis Disability and Oasis Disability Group marks on Defendants' oasisdisabilitygroup.com and otherwise to offer Social Security advocacy services constitutes use in commerce in connection with the sale, offering for sale, distribution, and advertising of goods and services.

71.     Defendants' use of marks confusingly similar to the Asserted Oasis Marks constitutes a false designation of origin, a false or misleading description of fact or a false or misleading representation of fact that is likely to cause confusion, mistake, or deception in violation of the Lanham Act Section 43(a), 15 U.S.C. § 1125(A)(1)(a).

72.     Defendants' actions have resulted in actual and probable injury to Oasis and Oasis is likely to continue to suffer harm without judicial intervention.

73.     Oasis has no adequate remedy at law for the irreparable injury and other damage Defendants are causing to Oasis's business reputation and goodwill.

74.     Oasis has suffered and will continue to suffer economic loss in an amount to be proven at trial directly and proximately caused by Defendants' acts alleged herein.

75.     On information and belief, Defendants' actions have been intentional, with knowledge, willful, with actual malice, and in bad faith, justifying the imposition of enhanced damages.

76.     Defendants' actions make this case exceptional within the meaning of 15 U.S.C. § 1117(a), thereby entitling Oasis to an award of reasonable attorneys' fees and costs.

## COUNT III:

## UNFAIR COMPETITION/UNFAIR OR DECEPTIVE ACTS UNDER 815 ILCS 510/1 *ET SEQ.*

77.     Oasis realleges and incorporates by reference paragraphs 1 through 76 of this Complaint as if set forth fully herein.

78.     Defendants' unlawful use of marks confusingly similar to the Asserted Oasis Marks has caused a likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services, or causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with or certification by Oasis.

79.     Defendants have engaged in deceptive trade practices in the course of business within the meaning of 815 ILCS §510/2 (2) and (3) by their unauthorized use of marks confusingly similar to the Asserted Oasis Marks.

80.     Defendants' actions have resulted in actual and probable injury to Oasis and Oasis is likely to continue to suffer harm without judicial intervention.

81.     Defendants' actions have caused irreparable harm, damage, and injury to Oasis and Oasis has no adequate remedy at law.

82.     On information and belief, Defendants' actions where conducted in bad faith with deliberate disregard of Oasis's rights, and to deprive Oasis of its rights.  As such, Defendants' conduct warrants an award of punitive damages in an amount sufficient to punish Defendant and deter such conduct.

## COUNT IV:

## CYBERSQUATTING UNDER 15 U.S.C. § 1125(d)(1)(A)

83.     Oasis realleges and incorporates by reference paragraphs 1 through 82 of this Complaint as if set forth fully herein.

84.     Defendants' actions as complained of herein violate the Federal Anticybersquatting and Consumer Protection Act, 15 U.S.C. §1125(d)(1)(A).

85.     Oasis is the owner of the distinctive family of Oasis Marks, and those marks were distinctive before the time at which a privacy protected entity, presumably one or more of the Defendants, registered the oasisdisabilitygroup.com domain name.

86.     Upon information and belief, Defendants caused to be registered and used the infringing domain name oasisdisabilitygroup.com despite actual and/or constructive knowledge of Oasis's prior rights in its distinctive family of Oasis Marks.

19

87.     Upon information and belief, Defendants registered the domain name oasisdisabilitygroup.com with the bad faith intent to divert consumers from Oasis's domain names oasisfinancial.com and oasisdisability.com and profit from the confusing similarity of the infringing domain name to Oasis's distinctive family of Oasis Marks.

88.     The registration and use of oasisdisabilitygroup.com, which is identical or confusingly similar to one or more of the distinctive family of Oasis Marks, have caused and will continue to cause, serious and irreparable injury to Oasis's business reputation and goodwill, for which there is no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Oasis prays for relief as follows:

A.  A judgment declaring that Defendants have committed trademark infringement under 15 U.S.C. § 1114(1);

B.  A judgment declaring that Defendants committed unfair competition under 15 U.S.C. § 1125(a);

C.  A judgment declaring that Defendants have committed deceptive trade practices under 815 ILCS 510/1 *et seq.*;

D.  A judgment declaring that Defendants Gramenos is vicariously liable for trademark infringement and unfair competition under the Lanham Act and under Illinois law;

E.  A judgment declaring that Defendants have committed cybersquatting under 15 U.S.C. § 1125(d);

F.  A judgment declaring that Defendants' violations were willful;

G.  A preliminary and permanent injunction enjoining Defendants and any of Defendants' ODG and Disability Corner's officers, agents, servants, employees, and all persons in active concert or participation with the Defendants from using the

20

Asserted Oasis Marks or any other name or mark consisting of or containing "Oasis" in connection with any advertising, promotion, offer for sale, or sale of disability advocacy service and any other goods or services that are the same as, related to, or confusingly similar to the financial services offered by Oasis;

H. Pursuant to 15 U.S.C. § 1118, order that Defendants must deliver up for destruction all labels, signs, promotional materials, advertisements, and any other materials that bear any of Oasis's Oasis Marks, or any other mark that consist of or contains "Oasis;"

I. An order that Defendants must provide and pay for corrective action;

J. An order that the domain name registration for oasisdisabilitygroup.com must be transferred to Oasis;

K. As a result of the unlawful activities described herein, a judgment that Defendants pay Oasis:

    a. General, special, actual and/or statutory damages, according to proof at trial, trebled and increased due to the nature of Defendants' conduct described herein;

    b. All of Defendants' profits or gains of any kind as a result of its acts of unfair competition;

    c. Pre-judgment and post-judgment interest;

    d. Punitive and exemplary damages;

    e. Oasis's attorneys' fees and costs.

L. Pursuant to 15. U.S.C. §1116, an order that Defendants must file with this Court and serve on Oasis within thirty (30) days issuance of an Order, a report in writing and under oath

setting forth in detail the manner and form in which Defendants have complied with the

Order; and

M. Such other relief as this Court may deem just and proper.


## DEMAND FOR JURY TRIAL

In accordance with Federal Rule of Civil Procedure 38(b), Oasis demands a trial by

jury on all issues so triable.



Dated: April 14, 2017                    Respectfully submitted,


                                         /s/ *Lisa M. Holubar*
                                         Barry F. Irwin, P.C.
                                         Lisa M. Holubar
                                         Jared E. Hedman
                                         Chris Eggert
                                         **Irwin IP LLC**
                                         1333 Burr Ridge Parkway, Suite 200
                                         Burr Ridge, IL 60527
                                         Phone: 630.756.3101
                                         Facsimile: 630.756.3001
                                         birwin@irwinip.com
                                         lhoubar@irwinip.com


                                         *Attorneys for Plaintiff Oasis Legal Finance*
                                         *Operating Company LLC*